UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CARLSON PET PRODUCTS, INC., | Case No. 0:17-cv-02529-PJS-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| NORTH STATES INDUSTRIES, INC., | |
| Defendant. | |

Bryon Wasserman and Frederick A. Tecce, Ice Miller LLP; Emeric J. Dwyer, Cameron Law Office Chartered; counsel for Carlson Pet Products, Inc.

Thomas J. Leach, III, Michael A. Erbele, and Rachel C. Hughley, Merchant & Gould PC, counsel for North States Industries, Inc.

Carlson Pet Products, Inc., brought this suit alleging that North States Industries, Inc., is selling pet gate products that infringe two of Carlson's patents. North States has filed a motion asking the Court to stay this litigation while the United States Patent and Trademark Office ("PTO") makes a decision on North States' *ex parte* requests for reexamination of both of the patents at issue.[1] [Def.'s Mot. ECF No. 36.] For the reasons set forth below, the court finds that a stay is appropriate.

---

[1] The patents in suit are U.S. Patent No. 8,448, 318 ("the '381 Patent), and U.S. Patent No. 9,458,668 ("the '668 Patent").

1

## I.  Standard Governing North States' Motion

In determining whether to grant North States' request for a stay, the Court considers the following factors:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*Card Tech. Corp v. DataCard Corp.*, No. 05-cv-2546 (MJD/SRN), 2007 WL 551615, at *3 (D. Minn. Feb. 21, 2007). The Court has substantial discretion to weigh these factors in light of the unique circumstances of the case before it, and decide whether a stay is appropriate using its inherent power to manage litigation. *See Honeywell Intern., Inv. v. Furuno Elec. Co. Ltd.*, No. 09-cv-3601 (MJD/AJB), 2010 WL 3023529, at *2 (D. Minn. July 30, 2010) (citing *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008), and *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001)).

## II.  Dilatory Tactics and Gamesmanship

Before turning to the three factors listed above, the Court addresses Carlson's argument that this case should not be stayed because North States has intentionally delayed the litigation and engaged in improper gamesmanship. Carlson presents this argument as a stand-alone reason to deny the motion for a stay, but these accusations also inform its discussion of the undue-prejudice and stage-of-litigation factors. [*See* Pl.'s Mem. at 1-2, 4-6, 10-12, 14-15, ECF No. 43.]

Primarily, Carlson contends that the case should not be stayed because North States chose to pursue *ex parte* reexamination rather than requesting *inter partes* review ("IPR"). Carlson argues that North States only made this choice because it wanted to delay this litigation as much as possible, as evidenced by the longer timeline for completion of *ex parte* reexamination and the fact that reexamination does not have the same estoppel effect as IPR. [Pl.'s Mem. 4-6.] At least one court has construed an alleged infringer's choice to seek *ex parte* reexamination instead of pursuing IPR as an indication of "delaying tactics." *See Elm, Inc. v. VenMill Indus., Inc.*, No. 14-cv-4585 (SRC), Doc. No. 43 at 2 (D.N.J. June 18, 2015) (denying a motion to stay and inferring dilatory motive from, *inter alia*, the fact that the defendant sought *ex parte* reexamination instead of IPR). However, the record in this case does not support an inference that North States requested *ex parte* reexamination for an improper purpose. First, it was reasonable for North States to choose not to pursue IPR given that the constitutionality of the procedure is currently being considered by the United States Supreme Court in *Oil States Energy Servs., LLC v. Greene's Energy Gr., LLC*, 137 S. Ct. 2239 (2017) (granting petition for certiorari). Moreover, as counsel for North States explained at the hearing, choosing *ex parte* reexamination makes economic sense because IPR filing fees alone would cost $50,000 more than reexamination. While the Court need not agree that *ex parte* reexamination is a superior option for the defendant, the reasons given plainly demonstrate that the choice between the two

3

processes was not made for the illegitimate goal of seeking a longer delay of the litigation.

Carlson also asserts that North States improperly delayed this case by waiting nearly seven months to file its requests for *ex parte* reexamination after seeking two extensions of the deadline for answering or otherwise responding to the complaint. [Pl.'s Mem. at 10-12.] By contrast, North States lays the blame for the slow pace of the litigation since the filing of the Complaint at Carlson's doorstep. [Def.'s Mem. at 8-10.] Neither party is solely responsible for the relatively slow pace at which things have gotten underway in this case. Rather than demonstrating that North States has engaged in tactical delay, the procedural history suggests that each side has extended professional courtesies, North States pursued reasonable pre-answer motion practice, and the parties advanced their own litigation interests.[2]

Based on the entire record, the Court finds no basis to conclude that the motion to stay should be denied due to improper conduct by North States of its counsel.

---

[2]   Carlson also asserts that North States has acted improperly in this case because North States filed its *ex parte* reexamination requests on the same date that another defendant, Summer Infant, Inc., filed a request for *ex parte* reexamination in a different case brought by Carlson's sister company in the District of Delaware. Carlson asserts that "North States obviously coordinated its filings with Summer Infant to obtain some type of litigation advantage." [Pl.'s Mem. at 12.] It is unclear what litigation advantage Carlson even fears, and Carlson has provided nothing more than speculation to support this accusation.

**III.    The Stage of the Litigation**

As described above, the first consideration in the analysis of whether to grant a stay in this circumstance is the stage of the litigation. This case is in its infancy. Discovery is not complete and no trial date has been set. The Complaint was filed July 5, 2017, but in response to North States' motion to dismiss, Carlson sought to amend. The District Court approved a stipulation for the amendment on November 27, 2017. [ECF No. 27.] North States answered the First Amended Complaint and filed a Counterclaim on December 11, 2017. [ECF No. 28.] Carlson filed an Answer to North States' Counterclaim on January 11, 2018, after obtaining North States' consent to the untimely submission. [ECF No. 33.] On January 18, 2018, North States made its request to the PTO for *ex parte* reexamination. [Leach Decl. ¶¶ 5-6 & Exs. 3-4, ECF No. 39.] The Court held a telephonic pretrial conference on January 25, 2018. [Mins. of Pretrial Conference, ECF No. 42.] Although the Court instructed the parties to make their initial disclosures, it has not yet entered a scheduling order.

The reality that this litigation has just begun weighs in favor of North States' request for a stay. Relatively few resources have been spent by either side and the Court has not yet invested substantial time managing the litigation or deciding substantial legal questions.

Carlson argues that the stage of the litigation does not support a stay because: (1) the case has actually been pending for several months; (2) each side has proposed a schedule; and (3) Carlson has served discovery. [Pl.'s Mem. at 14, ECF No. 43.]

Though the case has been pending since last July, this does not change the fact that the case remains in the earliest stages. Significant litigation has not yet taken place. Similarly, the fact that the parties have had a Rule 26(f) conference and Carlson served initial discovery requests does not convince the Court that the case has progressed to a stage at which entry of a stay would be inappropriate.

In sum, this is not a case where the request to stay the proceedings was made late in the litigation, after the parties and the Court have invested significant resources. This factor weighs heavily in favor of entering a stay.

## IV. Simplification of the Issues

The Court is also persuaded that granting a stay pending reexamination in this case has significant potential to simplify the issues that will ultimately be before the Court in this litigation. The reexamination's impact could include the following:

> (1) all prior art presented to the Court will have been first considered by the PTO, with its particular expertise;
> (2) many discovery problems related to the prior art can be alleviated by the PTO examination;
> (3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed;
> (4) the outcome of the re-examination may encourage a settlement without the further use of the Court;
> (5) the record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation;
> (6) issues, defenses[,] and evidence will be more easily limited in pre-trial conferences after a reexamination; [and]
> (7) the cost will likely be reduced both for the parties and the Court.

6

*Intellectual Ventures II LLC v. U.S. Bancorp*, No. 13-cv-2071 (ADM/JSM), 2014 WL 5369386, at *5-6 (D. Minn. Aug. 7, 2014) (quoting *Card Tech. Corp.*, 2007 WL 551615, at *3).

Whichever way the reexamination process plays out for Carlson's patents, staying this case so that the PTO can apply its expertise will necessarily simplify this litigation, so this factor weighs heavily in favor of granting a stay. In North States' requests for *ex parte* reexamination, it has asked the PTO to invalidate the '381 and '668 Patents due to prior art references that were not previously considered by the PTO. [Leach Decl., Ex. 3 at 8, 23-44 (describing proposed grounds for rejection of the '381 Patent); Leach Decl., Ex. 4 at 7, 14-43 (explaining proposed grounds for rejection of the '668 Patent).] If the PTO denies North States' applications, the Court can lift the stay, enter a schedule, and this case will move forward.[3] If the PTO grants North States' requests for *ex parte* reexamination, the potential for simplification of the issues is significant. If the PTO cancels all the claims in the patents in suit, this

---

[3] The Court is not persuaded by Carlson's argument that this factor weighs against a stay because "the PTO has not even agreed to institute North States' reexamination requests, and could very well decline to do so." [Pl.'s Mem. at 13.] North States has shown that 92% of all applications for *ex parte* reexamination are granted by the PTO. [*See* Leach Decl. ¶ 7, Ex. 5 at 1.] Statistically speaking, it is unlikely that the PTO will deny North States' reexamination applications. Perhaps more importantly, the PTO will decide whether to grant North States' request relatively soon, which is relevant to the question of prejudice to Carlson. If Carlson is right that the PTO may not grant North States' requests, the stay can simply be lifted and this case can go forward.

case will likely be as simple as it gets: it may be dismissed. If, on the other hand, all the patent claims are not cancelled, the reexamination could result in "eliminating, clarifying, or limiting the claims." *Canady v. Erbe Elektromedizin GmbH,* 271 F. Supp. 2d 64, 68 (D.D.C.2002). That result will still simplify discovery in this litigation, clarifying the areas where the parties need to develop their positions and the Court needs to focus its attention. If the PTO upholds the validity of some or all of the patent claims, this too will simplify the issues: it will provide "strong evidence that [the] district court must consider in assessing whether [North States] has met its burden of clear and convincing evidence [on the issue of invalidity]." *Broad. Innovation, LLC v. Charter Commc'ns, Inc.*, No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165, at *2 (D. Colo. July 11, 2006).

In addition, the reexamination process allows Carlson to add new claims or amend those already in the patents. 37 C.F.R. § 1.530(d). It would only complicate matters (not simplify them) to have the parties litigate in this Court with one set of claims in mind if Carlson could exercise this option during the reexamination and fundamentally alter the patents themselves. The parties and the Court could expend considerable as to one set of claims only to have those claims adjusted by the PTO midstream.

Carlson argues that granting the stay will not result in simplification of the issues because even if the PTO rejects all of North States' arguments for invalidity of the patent, North States can still make identical arguments in this Court once the

8

reexamination process is complete. [Pl.'s Mem. at 13.] The Court disagrees. Although *ex parte* reexamination does not have the same estoppel effect that results from *inter partes* review, the PTO's rejection of North States' invalidity contentions would provide "strong evidence" that can be marshaled in any subsequent litigation in this Court. *See Broad. Innovation*, 2006 WL 1897165, at *2 ("Although not binding, a decision by the PTO upholding the validity of reexamined patent claims is strong evidence that a district court must consider in assessing whether the party asserting invalidity has met its burden of clear and convincing evidence."). North States may not be definitively foreclosed by the PTO's reexamination ruling from challenging validity of the patents in suit, but it will face an uphill battle in doing so, thereby simplifying the issues and the trial.

Second, Carlson argues that a stay will only "simplify a case if the PTO finds that *all* infringed claims are cancelled." [Pl.'s Mem. at 13 (emphasis in original).] This is simply untrue. Of course, cancellation of all claims in the patents in suit in the reexamination would provide the greatest simplification—the patents would be invalid and there would be no need for further litigation. However, meaningful simplification would also be achieved from partial cancellation, limitation, or clarification of claims through by the PTO. Indeed, Carlson argues that because a significant percentage of claims emerge from *ex parte* reexamination "confirmed or changed," the parties are likely to return to this Court for further proceedings. [*See* Pl.'s Mem. at 14 (citing Wasserman Decl., Ex. A at 2).] However, the parties would be

9

returning to this Court after the PTO, applying its particular expertise, explored specific invalidity contentions that are sure to play a part in this case. Even though something short of complete cancellation may not necessarily make the case go away, a stay nonetheless ensures that the parties are not litigating this case with an eye toward the patents as they exist today only to have the target shifted at some point in the future.

## V.   Undue Prejudice and Tactical Disadvantage

The parties' most significant dispute on the motion to stay is over the question of undue prejudice and tactical disadvantage Carlson may suffer as a result of a potentially lengthy stay. Although this factor is a closer call for the Court, it does not outweigh the other considerations which support a stay

First, in assessing the harm Carlson might experience from a stay, it is helpful to have a sense of how long of a delay is at issue. However, the parties disagree about how the Court should weigh the typical length of the *ex parte* reexamination process. North States points to cases stating that the "delay inherent in the reexamination process does not constitute, by itself, undue prejudice." *Select Comfort Corp. v. Sleep Better Store, LLC*, No. 12-cv-1148 (JNE/JSM), 2013 WL 12149248, at *6 (D. Minn. Jan. 8, 2013) (internal quotations omitted). Carlson does not rely on the simple fact of delay itself, but makes a more nuanced argument in support of its assertion that the delay contemplated by a stay in this case is uniquely unjustified and untenable. Specifically, Carlson argues that *ex parte* reexamination takes longer than *inter partes*

10

review, increasing both the prejudice and the unfairness of the delay. And Carlson emphasizes that during the potentially three-year period for reexamination to conclude, North States will continue infringing Carlson's patents and eroding Carlson's market share as a direct competitor in the pet gate market. Carlson also asserts that the harm of a stay would be magnified because other competitors may decide to enter the market place during the lengthy delay. [*See* Pl.'s Mem. at 7-8.]

The fact that the parties compete for sales of pet gate products in the same retail market certainly creates the possibility that Carlson may be harmed by ongoing infringement during the reexamination. Indeed, there are cases where courts have concluded that the undue prejudice factor weighs against a stay because the parties are direct competitors. *See, e.g.*, *United Pet Grp., Inc. v. MiracleCorp Prod.*, No. 4:12-cv-00440AGF, 2012 WL 2458539, at *3 (E.D. Mo. June 27, 2012) ("The Court concludes that the third factor weighs in Plaintiff's favor, as Plaintiff and Defendant are direct competitors.") (citing *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789-90 (D. Del. 2011), and *Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 2:06-cv-242, 2008 WL 906315, at *1 (E.D. Tex. Mar. 31, 2008)).[4] Yet other cases have found

---

[4] At the hearing, Carlson's counsel provided the Court with a copy of an order from a case in this District that reached a similar conclusion regarding undue prejudice where a direct competitor and alleged infringer sought a stay pending reexamination. *Ecolab, Inc. v. Gurtler Chemicals, Inc.*, No. 14-cv-495, Doc. No. 44 at 4-5 (D. Minn. Mar. 3, 2015) (reasoning that a stay would be unduly prejudicial to the plaintiff where the parties were direct competitors and the delay from an average reexamination would truncate any injunctive relief cause the plaintiff to "potentially

(*footnote continued on following page*)

no unfair prejudice will be caused by a stay in patent-infringement litigation between direct competitors because even in such cases money damages and a permanent injunction at the end of the litigation could remedy the harm caused by the ongoing infringement during the stay. *See, e.g.*, *Oticon A/S v. GN Resound*, No. 15-CV-2066 (PJS/HB), 2015 WL 5752429, at *2 (D. Minn. Aug. 5, 2015) ("Money damages and, in appropriate cases, a permanent injunction, are ordinarily adequate to remedy the harm caused by infringement, including loss of sales and market share.");[5] *Graceway Pharm., LLC v. Perrigo Co.*, 722 F. Supp. 2d 566, 577 (D.N.J. 2010) ("[L]oss of market share and price erosion are economic harms and are compensable by money damages.") (citation omitted). Essentially, both parties and the Court's own research have identified cases on this issue which lean in opposite directions. The Court finds that the appropriate weight to be assigned to this factor is not decisively resolved by the

---

(*footnote continued from previous page*)
lose valuable time to procure evidence"). Shortly after the stay was denied, however, the District Court reversed course and stayed the proceeding because the PTO had rejected each claim of patent-in-suit and given the plaintiff two months to respond to that decision. *Id.*, No. 14-cv-495, Doc. No. 47 at 2 (D. Minn. Apr. 28, 2015).

[5]   *Oticon* involved a request for a stay pending completion of an *inter partes* review, but courts have reached similar conclusions in cases where the stay is requested pending completion of *ex parte* reexamination. *See, e.g.*, *Select Comfort Corp. v. Sleep Better Store, LLC*, No.12-cv-1148 (JNE/JSM), 2013 WL 12149248, at *6 (D. Minn. Jan. 8, 2013) ("Despite defendants' representations to the contrary, even if defendants were to continue to sell beds with the allegedly infringing remote wireless controls to obtain present or prospective market share from Select Comfort during the stay, the ability to obtain monetary damages from the infringing parties can address this potential harm.").

fact that Carlson and North States are "direct competitors"; rather, properly weighing the possible prejudice caused by a stay requires a focus on the specific record presented.

Though Carlson asserts it will suffer competitive harm that cannot be compensated through money damages, its evidentiary showing on this point is unpersuasive. Carlson's president, who is also the inventor of the '381 and '668 Patents, states that: (1) Carlson and North States sell their pet gates through the same main retail chains; (2) "[i]f North States is permitted to continue selling its accused products, Carlson's competitive position in the pet gate market will be harmed"; and (3) [i]f North States is permitted to continue to profit from Carlson's innovations without consequence, there is real risk to Carlson that other competitors may also enter the pet gate market with infringing products, further harming Carlson's market position." [Flannery Decl. ¶¶ 6-8, ECF No. 44.] Though the Court appreciates Carlson's president's concerns and his desire to obtain the benefits of his company's intellectual property, this evidence of competitive harm does not explain how eventual monetary damages and a permanent injunction would be an inadequate remedy. *See Hansen Mfg. Corp. v. Enduro Sys., Inc.*, 2012 WL 381238 (D.S.D. Feb. 6, 2012) ("[C]onclusory statements about [plaintiff's] loss of competitiveness . . . undercuts its claims that it will be prejudiced if a stay is granted.").

In addition, the Court notes that Carlson did not seek a temporary restraining order or preliminary injunction when this case began. Whether the litigation proceeds

13

in court or waits for the PTO to conclude its work, North States may continue to sell the allegedly infringing products: the alleged harm is of the same type either way, though admittedly magnified by the duration of this dispute. *Oticon*, 2015 WL 5752429, at *2 ("Plaintiffs' decision not to seek a preliminary injunction against Defendants in this case, while by no means dispositive of the issue, tends to suggest Plaintiffs would not be unduly prejudiced by a stay."). Were Carlson indeed concerned about some sort of harm that could not be addressed with money damages, seeking a preliminary injunction may have been an appropriate remedy.

Carlson also argues that entry of a stay will be unduly prejudicial because it will be unable to obtain prompt discovery concerning willful infringement and copying, risking the loss of key evidence during the stay. [Pl.'s Mem. at 9-10.] Counsel for North States acknowledged at the hearing that a litigation hold has been put in place, which will ensure that any documents relevant to these issues will be available if litigation continues following the *ex parte* reexamination. Though Carlson also expressed concern about witness recollection several years in the future, Carlson's counsel anticipated that this case might require only three depositions, making witness testimony only a small part of its proof. In light of these considerations, the Court is not convinced that the delay caused by a stay will be unfairly prejudicial to Carlson or unduly interfere with its ability to prove its case.

On balance, the Court finds that this factor does not weigh strongly in either direction. A stay will certainly interfere with Carlson's goals of bringing this case to a

14

swift conclusion. But the delay will not clearly cause Carlson to suffer non-compensable competitive harm, nor prevent it from being able to prove its claims. And Carlson has not persuaded the Court that denial of the stay is warranted because of any misconduct or dilatory motive employed by North States.

## VI. Merits of Reexamination

Carlson asserts that the stay should be denied because North States' arguments to the PTO in its reexamination requests are substantively weak. [Pl.'s Mem. at 16-24.] The Court declines Carlson's invitation to wade into the deep waters of the validity debate at this stage. When the factors relevant to the stay issue weigh in favor of entering a stay, as they do in this case, it would be imprudent to opine on the merits of the very issues that the PTO will address with its particular expertise.

## VII. Conclusion

For the reasons set forth above, the Court concludes that the relevant factors weigh in favor of granting a stay. The undue prejudice/tactical disadvantage prong is essentially neutral while the stage of the litigation and potential for simplification of the issues and trial weigh in favor of granting the stay. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant North States Industries, Inc.'s Motion to Stay **[ECF No. 36]** is **GRANTED**.

2. This action is **STAYED**.

3. Within 14 days of any decision by the PTO resolving North States' application for reexamination of the patents in suit, the parties shall provide an update to the Court on the status of the proceedings and file any request that the stay entered by this Order be lifted or continued.

Date: March 5, 2018                                   *s/ Katherine Menendez*
                                                      Katherine Menendez
                                                      United States Magistrate Judge