# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

CARLSON PET PRODUCTS, INC.,                    Case No. 0:17-cv-02529-PJS-KMM

          Plaintiff,

v.                                             **ORDER**

NORTH STATES INDUSTRIES, INC.,

          Defendant.

---

Bryon Wasserman and Frederick A. Tecce, Ice Miller LLP; Emeric J. Dwyer, Cameron Law Office Chartered; counsel for Carlson Pet Products, Inc.

Thomas J. Leach, III, Michael A. Erbele, and Rachel C. Hughley, Merchant & Gould PC, counsel for North States Industries, Inc.

---

Carlson Pet Products alleges that North States Industries sells pet gate products that infringe two of Carlson's patents. On May 13, 2019, following a pretrial conference, the parties informed the Court that they had reached agreement on nearly all terms of a proposed protective order, but that two issues remained unresolved. [Letter to Menendez, M.J. (May 13, 2019), ECF No. 70.] Specifically, the parties asked the Court to decide the following two questions:

    (1) Should the protective order include a provision that allows in-house executives of North States, Dean Weisbeck and Julie Yager Grad, to have access to information that is designated as "confidential" or should such "confidential" documents only be available to lawyers?

    (2) Should the protective order include the patent prosecution bar proposed by North States?

The Court ordered the parties to file simultaneous letter briefs on these issues, which they did on May 24, 2019. [Text Only Order, ECF No. 71; Pl.'s Letter, ECF No. 74; Def.'s Letter, ECF No. 75.] The Court held a telephonic hearing on June 5, 2019, and informed the parties of

its ruling on the first issue. The Court took the patent-prosecution bar under advisement and informed the parties that both decisions would be included in a subsequent written order. For the reasons that follow, the Court concludes: (1) that North States' proposal for a protective order that allows non-lawyers to see information designated as "confidential" is appropriate for this litigation; and (2) that North States' proposed patent prosecution bar is, in some respects, too broad for purposes of this litigation. However, the Court finds that a narrower prosecution bar is appropriate.

## I.    Access to "Confidential" Documents

The proposed protective order submitted by North States includes provisions that allow the parties to protect the confidentiality of discovery information through several tiers of designations: "Confidential", "Confidential – Attorneys' Eyes Only", and "Confidential – Attorneys' Eyes Only Prosecution Bar." The two tiers involving Attorneys' Eyes Only designations cannot be viewed by any non-lawyer, but information designated as "Confidential" may be disclosed to certain non-lawyer employees of each side. North States identified Mr. Weisbeck and Ms. Yager Grad as the two non-lawyers that will have access to information designated as confidential. [Def.'s Letter, Ex. A, ECF No. 75-1.] Carlson argued that the "Confidential" designation is inappropriate because none of North States' non-lawyer personnel should be allowed to review Carlson's confidential information. [Pl.'s Letter at 4 ("Carlson respectfully submits that non-lawyer employees of North States should not be provided with access to Confidential Information.").]

As discussed at the June 5, 2019 telephonic hearing, the Court finds that the multi-tiered system proposed by North States is appropriate for this case. Similar provisions are commonly found in protective orders in the District of Minnesota, including those entered in other patent-

infringement cases between direct competitors. The multi-tiered approach will adequately protect both sides' legitimate competitive interests. The parties are likely to exchange information that is non-public and merits a "Confidential" designation because it is generally not shared with the outside world. However, some of that information is unlikely to be so competitively sensitive that it is necessary to prevent anyone other than an attorney from reviewing it. Moreover, by identifying only two specific North States employees who are allowed to access information occupying this middle ground, the multi-tiered approach adds a greater layer of protection for "Confidential" information than is often offered. Such a provision significantly limits risks by ensuring that Carlson's "Confidential" information is not widely disseminated among North States personnel. The more restrictive tier of "Confidential – Attorneys' Eyes Only" designation can properly be invoked for information that is so competitively sensitive that it should not be made available to either party's non-lawyer personnel.

Adopting Carlson's position and eliminating the "Confidential" category would require the Court to presume that all the potentially confidential information exchanged in this case needs the robust protection of an "Attorneys' Eyes Only" label. However, Carlson has not shown (and there is no reason to suspect) that discovery in this case will involve exclusively the exchange of confidential information deserving of such heightened protection. During the telephonic hearing, the Court encouraged the parties to avoid over-designation of documents with an "Attorneys' Eyes Only" label, as well as over-designation of documents as "Confidential" more generally. The parties should also work cooperatively to resolve any disagreements about the merits of any designation without the need for judicial intervention.

For these reasons, Carlson's request that all non-lawyer employees of North States be denied access to any information marked "Confidential" under the protective order is denied.

The Court will enter a protective order that adopts Paragraphs 3 and 4 of the proposed protective order attached to North States' Letter. [Defs.' Letter at 5–7, ¶¶ 3–4.] The Court notes that Paragraph 3(b)(2) of this proposed order identifies the two North States employees to whom "Confidential" information may be disclosed, but it does not include employees of Carlson to whom such information may be disclosed. Within seven days of this Order, counsel for Carlson shall advise the Court via e-mail of the names of non-lawyer employees to whom information designated as "Confidential" by North States may be disclosed.

## II. Prosecution Bar

The more difficult issue raised by the parties is whether the protective order in this case should include a patent prosecution bar as requested by North States. North States asks the Court to include such language because several attorneys representing Carlson in this litigation also prosecute Carlson's patents before the United States Patent and Trademark Office ("USPTO"). Because Carlson's attorneys wear two hats, North States asserts that they should not be allowed to see competitively sensitive information that will be disclosed during discovery in this case while continuing to engage in patent-prosecution activities for the patents at issue or for similar patents. Although the proposed protective order already prohibits anyone from using another party's confidential discovery materials for any purposes other than this litigation, North States argues that greater protection is needed to guard against the risk that Carlson's counsel will inadvertently use such information in patent-prosecution activities, giving it an unfair competitive advantage.

Carlson argues that the proposed prosecution bar is inappropriate for several reasons. Carlson suggests that this case simply will not involve the exchange of highly technical information that needs to be protected by a prosecution bar. Carlson also argues that the language

North States has proposed is too broad because it would extend the bar for three years after the end of litigation, prevent Carlson's litigation counsel from providing even high-level advice regarding patent-prosecution activity, and cover prosecution proceedings that unfairly restrict Carlson's efforts to protect its intellectual property.

For the reasons that follow, the Court concludes that a prosecution bar is appropriate in this case, but the precise prosecution bar proposed by North States is too broad in some respects.

## A. Legal Standards

Because North States is the proponent of a prosecution bar in this case, it bears the burden to show there is good cause to include the disputed provisions in a protective order. *See* Fed. R. Civ. P. 26(c); *In re Deutsche Bank Tr. Co. Am.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010); *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 734 (D. Minn. 2008). Protective orders often include provisions that prohibit the use of confidential information for purposes other than the pending litigation, but courts have recognized that these provisions may not effectively protect against the possibility of inadvertent use in certain circumstances. This is because "'it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.'" *Deutsche Bank*, 605 F.3d at 1378 (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980)). In recognition of this reality, courts sometimes include provisions in patent cases that prevent a party's counsel from obtaining "'extremely potent' confidential information" when they are also involved in "competitive decisionmaking." *See id.* (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467 (Fed. Cir. 1984)). "Competitive decisionmaking" refers to:

> a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product, design, etc.) made in light of similar or corresponding information about a competitor.

*Id.* (quoting *U.S. Steel*, 730 F.2d at 1468 n.3).

In patent litigation, the concern that an attorney who is engaged in competitive decision-making may inadvertently use confidential information produced in discovery arises "when trial counsel also represent the same client in prosecuting patent applications." *Id.* at 1379. However, because patent prosecution involves a range of responsibilities, an attorney must be "substantially engaged with prosecution" to be considered a competitive decision-maker. *Id.* at 1380. Such substantial engagement involves several tasks, including:

> obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution.

*Id.* at 1380. For attorneys engaged in these activities, the "risk of inadvertent disclosure of competitive information learned during litigation is ... much greater[.]" *Id.*; *Northbrook Digital*, 625 F. Supp. 2d at 737 ("Protective orders issued by this Court in other patent cases have likewise recognized that attorneys who are directly involved in patent prosecution may be subject to greater restrictions than other attorneys.").

In addition to identifying whether counsel are engaged in competitive decision-making, a court considering whether to impose a prosecution bar must be convinced, "in the first instance," that confidential information that might be produced during discovery is "relevant to the preparation and prosecution of patent applications before the [United States Patent and Trademark Office]." *Deutsche Bank*, 605 F.3d at 1381. When a litigant discloses information in discovery that is relevant to preparation of a patent application, such as "information related to

new inventions and technology under development, especially those that are not already the subject of pending patent applications," the need for a prosecution bar arises because competitive-decisionmakers may inadvertently use it in their prosecution-related activities. *Id.*; *see also Northbrook Digital*, 625 F. Supp. 2d at 735 (noting that "some courts distinguish between financial information and technical information, because the two types of information do not necessarily raise the same concerns"). However, information that is not relevant to the preparation of a patent application, such as "financial data and other sensitive business information," is insufficient to trigger the need for a prosecution bar, even if it is confidential. *Deutsche Bank*, 605 F.3d at 1381.

Courts considering a requested prosecution bar must also consider "the scope of the activities prohibited by the bar, the duration of the bar, and the definition of the subject matter covered by the bar." *Deutsche Bank*, 605 F.3d at 1381. A court must be satisfied that the bar prohibits activities where there is a legitimate risk of inadvertent use, that the prohibition lasts no longer than is necessary to protect against such use, and that it only applies to specific materials and to competitive decision-makers. *See id.*

If the Court determines that a patent prosecution bar is warranted, a party may seek "an exemption" from it for a particular attorney. *Id.* Determining whether to exempt a particular individual from a prosecution bar requires a court to "balance th[e] risk [of inadvertent disclosure or competitive use] against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *Id.* at 1380. Factors bearing on this balancing test include: how long the attorney has represented a client in patent-prosecution activities; how dependent on the attorney's long-term involvement the client is; and how difficult it would be for the client if it were forced to obtain new litigation counsel or to hire new

prosecution counsel. *Id.* at 1381. This balancing is difficult because "the factors that make an attorney so valuable to a party's prosecution interests are often the very factors that subject him to the risk of inadvertent use or disclosure of proprietary competitive information acquired during litigation." *Id.* The scope of the activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar are also relevant to this balancing test to determine "whether a particular individual may be properly exempt from the bar." *Id.*

Although courts considering requests for prosecution bars all tend to consider the above-listed factors, they have adopted a variety of frameworks for organizing the analysis. *See Front Row Tech., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1286–88 (D.N.M. 2015) (discussing distinctions between the majority and minority views on the framework established by *Deutsche Bank* and adopting the minority approach). Some courts have interpreted *Deutsche Bank* as establishing a multi-step analysis in which the proponent of the prosecution bar first bears the burden of showing that the counsel at issue are competitive decision-makers; and second, that the proposed bar reasonably reflects the risk of inadvertent use in light of the information that could trigger the bar, its duration, the scope of activities prohibited, and the subject matter it covers. Then the burden shifts to the opponent to demonstrate that its counsel's continued representation would not involve competitive decision-making and that the harm it would suffer outweighs the risk of inadvertent use. *See, e.g., Digital Empire Ltd. v. Compal Elec. Inc. Gr.*, No. 14-cv-1688-DMS(KSC), 2015 WL 10857544, at *3–8 (S.D. Cal. July 20, 2015) (describing and applying four steps of the analysis); *Front Row Tech.*, 125 F. Supp. 3d at 1287 (noting that the "majority approach involves three steps"). Other courts have taken a less mechanical approach. *See Northbrook Digital*, 625 F. Supp. 2d at 735 (noting the "fact intensive

... analysis" and identifying recurring "themes").[1] However, to decide this case, the Court need not resolve the subtle differences in the way that courts have conducted the analysis. The outcome of the Court's assessment would be the same regardless of whether the Court considered the themes from *Northbrook Digital* or the multiple steps identified by the courts interpreting *Deutsche Bank*.

### B.  Application to This Case

Based on the record before it, the Court concludes that, subject to certain limitations discussed below, including a patent-prosecution bar in the protective order is appropriate. The dispute here presents two threshold questions that must be answered: (1) are the litigation counsel for Carlson engaged in competitive decision-making?; and (2) will this case involve the exchange of information that presents a risk of inadvertent use by competitive decision-makers? As explained below, the answer to both questions is "yes." However, the Court also finds that some of the information North States suggests is sufficient to trigger the bar does not, in fact, present a reasonable risk of inadvertent use.

Because the Court answers those threshold questions in the affirmative, the Court must determine whether the duration of the bar, the scope of activities it prevents, and the subject

---

[1] The themes emerging from the case law identified by the District Court in *Northbrook Digital* are summarized as follows:

> First, the key issue in many cases is whether the litigants are direct competitors and whether the people who would be denied access to information under a protective order are involved in a party's competitive decisionmaking. Second, some courts distinguish between financial information and technical information, because the two types of information do not necessarily raise the same concerns. And third, courts differ over the extent to which involvement in patent prosecution is as competitive activity for protective-order purposes.

625 F. Supp. 2d at 735.

matter covered by it are reasonably tailored to the risk of inadvertent use. Here again, subject to certain limitations discussed below, the Court concludes that a patent-prosecution bar should be included in the protective order. Finally, the Court finds that balancing all of the relevant considerations, Carlson's concerns that it will be harmed by the inclusion of a patent-prosecution bar and unreasonably denied counsel of its choice do not outweigh the risk of inadvertent use presented under the unique circumstances of this case.

## 1. Competitive Decision-making

Carlson's counsel in this litigation include Bryon Wasserman and Frederick Tecce of the Ice Miller law firm in Philadelphia. Carlson does not have an in-house legal department, and Messrs. Wasserman and Tecce have represented and advised Carlson on a wide variety of matters for several years. Mr. Tecce, in particular, has represented Carlson (and its sister company) for nearly twenty years. Carlson represents that although neither Mr. Tecce nor Mr. Wasserman "are regularly involved in the drafting of patent claims, they provide some strategic counseling on prosecution matters, as they do for virtually all of Carlson's legal matters." [Pl.'s Letter at 4.] Mr. Tecce and Mr. Wasserman are listed as counsel on Carlson's submissions to the USPTO for reexamination proceedings relating to the patents at issue in this case. [Def.'s Letter, Ex. E, ECF No. 75-5.]

The Court finds that Mr. Tecce and Mr. Wasserman are engaged in competitive decision-making for Carlson, and notes that Carlson does not argue otherwise. Carlson's representation that Messrs. Tecce and Wasserman provide strategic advice on prosecution matters combined with North States' indication that Tecce and Wasserman confirmed they provide Carlson "advice with respect to its patent prosecution, claim scope, and strategy," [Def.'s Letter at 3], further support this finding.

## 2.  The Information to Trigger the Bar

The patent-prosecution bar proposed by North States allows a party to designate information as subject to the bar where it believes "in good faith" that the information meets three criteria. First, the information being disclosed "is commercially or competitively sensitive[.]" Second, the information "discloses technical details and/or market studies or analyses regarding the party's unreleased products." And third, "disclosing the Information to another party would cause injury to the Designating Party's commercial or competitive interests." [Appendix at A-1.[2]] In an attempt to further clarify what can be designated "Confidential – Attorneys' Eyes Only Prosecution Bar" the proposed protective order provides a non-exhaustive list of information that would meet these criteria, including:

> [1] technical specifications for unreleased products; [2] design and development documents involving unreleased products; [3] market studies or analyses regarding the future direction of the market for pet gates, pet enclosures or child safety gates; [4] internal communications regarding unreleased products; and [5] internal communications regarding market studies and/or analyses with respect to the future direction of the market for pet gates, pet enclosures or child safety gates.

[Appendix at A-1.]

North States argues that such information about its unreleased products should be covered by a prosecution bar because Carlson's litigation counsel could inadvertently use it in patent prosecution activities to draft claims that would include or preempt North States' innovations. North States asserts that it intends to disclose information about its own unreleased future products to defend itself against Carlson's claims in this litigation. Specifically, North States proposes offering such information to dispute Carlson's lost-profit damages because North

---

[2]      The paragraphs of the proposed protective order are set forth in full in the Appendix attached to this Order. [*See also* Def.'s Letter, Ex. A at 6–7, ¶ 5; *id.* at 14–15, ¶ 14.]

States' unreleased products constitute non-infringing alternatives. The Court finds that the likely disclosure of information concerning unreleased or potential future products identified in North States' proposed protective order is sufficient to necessitate a prosecution bar, though it disagrees with the breadth of the protection for which North States advocates.

### *Technical Information*

First, the Court notes that technical and design information, especially that which concerns unreleased products is the very kind of information that courts have identified as deserving of protection against inadvertent use. *Deutsche Bank*, 605 F.3d at 1381 (explaining the greater risk of inadvertent competitive use when litigation will involve the disclosure of "information related to new inventions and technology under development, especially those that are not already the subject of pending patent applications"). Competitively sensitive information regarding the technical specifications, design, and development of unreleased products is relevant to the preparation of patent applications, and if North States discloses it to Carlson, there is a risk that Carlson's competitive decision-makers could inadvertently use it for competitive advantage in patent prosecution. North States' proposed protective order includes language that applies to this category of information. [Appendix at A-1.]

Carlson nevertheless argues that the information at issue is not sufficient to justify adoption of a prosecution bar because "Carlson has already committed that it will not seek any discovery regarding the configuration of unreleased products...." [Pl.s Letter at 2.] Essentially, Carlson suggests that it would be unfair to force it to choose whether its litigation counsel could continue patent-prosecution activities or litigate this case when it is willing to forego information from North States that presents a risk of inadvertent use. However, this concession allays only some of North States' valid concerns. Carlson continues to seek lost profits as a category of

damages, introducing an issue in this litigation that brings information about North States' unreleased products squarely onto the field of play.[3] North States is entitled to present a defense to Carlson's case for damages, so Carlson's commitment not to seek information about North States' unreleased products does not fundamentally alter the Court's conclusion.

### *"Market Studies"*

Carlson next argues that "market studies" are not an appropriate subject of a prosecution bar [Pl.'s Letter at 2], and the Court agrees in part. Financial data and similar competitively sensitive business information are generally not considered relevant to patent prosecution activities. *Deutsche Bank*, 605 F.3d at 1381 ("[F]inancial data and other sensitive business information, even if deemed confidential, would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar."); *Northbrook Digital*, 625 F. Supp. 2d at 735 (noting that courts treat financial and technical information differently because they present different concerns). General evaluations of a market, with predictions about what consumers may be interested in buying or analyses of possible price points, is not the type of information that would be relevant for patent prosecution. However, this reality does not undermine North States' request for a prosecution bar, but supports modifying the language of the proposed bar at issue here.

---

[3]     Carlson insists that information about North States' unreleased products is not relevant to a non-infringing-alternatives analysis or that its relevance is "extremely limited." [Pl.'s Letter at 2.] North States disagrees with that proposition. [Def.'s Letter at 4 (citing *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1356 (Fed. Cir. 1999), and *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017)).] The Court declines to resolve this dispute definitively at this time. At a minimum, the authority relied on by North States persuades the Court that such information *may* be relevant to support a viable defense, so discovery related to that defense is appropriate.

Paragraph 5(a) of the proposed protective order provides that "technical details and/or market studies or analyses regarding the party's unreleased products" can be properly designated to be covered by the prosecution bar. [Appendix at A-1.] The proposed prosecution bar also lists "market studies or analyses regarding the future direction of the market for pet gates, pet enclosures or child safety gates; ... and internal communications regarding market studies and/or analyses with respect to the future direction of the market for pet gates, pet enclosures or child safety gates." [*Id.*] As drafted, this language is too broad to ensure that the covered information is closely tied to the risk of inadvertent competitive use. These delineations would allow North States to designate documents subject to the prosecution bar merely because they involve general market analyses, even if those studies reveal nothing about technical specifications or design of unreleased products. The Court finds that such information is more like the financial data or other commercially sensitive information that is not generally relevant to a patent application.

However, the Court concludes that tying market studies more explicitly to technical specifications or design and development information regarding unreleased products can cure this problem. The Court will modify the proposed language of Paragraph 5(a) so that a party may designate information as subject to the prosecution bar if the information specifically refers to technical specifications or design and development of a party's unreleased or potential future products. This better ensures that North States will only designate those market studies or analyses where there is a substantial risk of inadvertent use by Carlson's attorneys who are engaged in competitive decision-making in the patent arena.[4]

---

[4]     The Court finds that this modification to the proposed language also reflects the representations made by North States' counsel during the June 5, 2019 hearing about the type of information that would trigger the prosecution bar.

### 3. The Scope of Activities, Duration of the Bar, and Subject Matter Covered

Because the Court has found that Carlson's litigation counsel are competitive decision-makers and this case will involve the exchange of information that is relevant to patent prosecution, an initial showing has been made that a prosecution bar is appropriate in this case. However, the Court must also find that the scope of activities prohibited by the bar, its duration, and the subject matter it covers are reasonably related to the risk of inadvertent use. The Court finds that the proposed prosecution bar's duration is too long, but it can easily be shortened to better align with the risk. In addition, the scope of activities prohibited by the bar and the subject matter covered by it adequately reflect the risk of inadvertent use presented in this case.

#### *Duration*

First, the duration of the bar proposed by North States is too long. North States' proposed protective order imposes its prohibitions on Carlson's litigation counsel for a three-year period after the conclusion of this case, including the end of any appeals. [Appendix at A-2 ("For three years following the termination of this Action, including the expiration of the last period for appeal from any Order issued in connection with this action ...").] North States asserts that bars of up to 3 years are reasonable,[5] but they do not offer support for the proposition that the prosecution bar here needs to last so long or should be tied to the conclusion of any appeal. Absent a more robust showing from North States and based on this Court's review of the case law, the Court finds a more appropriate duration for the prosecution bar that will adequately protect against the risk of competitive use of North States' confidential information is one year

---

[5]      [Def.'s Letter at 2 (citing *Cherdak v. Koko Fitclub, LLC*, No. 14-10371-IT, 2015 WL 1895992 (D. Mass. Apr. 27, 2015).] The *Cherdak* decision relied upon by the defendants does not discuss in any detail the court's reasoning for why a three-year period was appropriate, so the decision offers little guidance.

from the entry of a final judgment in this Court. *See, e.g., Eon Corp IP Holdings, LLC v. AT&T Mobility LLC*, 881 F. Supp. 2d 254, 258 (D.P.R. 2012) (concluding that "the bar's duration should not be determined by this case's future life in the courts of appeals" and finding that "the duration of the bar should be one year from a final judgment *in this court*") (emphasis in original).

### Scope of Activities

The Court finds that the scope of activities prohibited by the proposed prosecution bar is appropriate. Here, the proposed prosecution bar would prevent Carlson's competitive decision-makers who receive the information discussed above from preparing and filing new patent applications for Carlson. It would also prohibit counsel from providing legal advice relating to prosecution before the USPTO and foreign patent offices for the patents in suit and related patents. [Appendix at A-2.] This prohibition on advising Carlson would extend to:

> invention identification; invention evaluation; the decision whether to file a patent application for an invention; preparation of and/or amendments to original, continuation, divisional, continuation-in part, request for continued examination, reissue, substitute, renewal or convention patent applications; specification or claim drafting; drafting or amending claims during reexamination or reissue; or consultation on any of the above matters with others performing these activities.

[*Id.*]

Carlson argues that "[t]hese restrictions go far beyond the drafting of claims and would effectively prevent Carlson's counsel from providing even high-level advice on any of the pet gate patents in its portfolio." [Pl.'s Letter at 3.] This argument does not convince the Court that the scope of activities prohibited by the prosecution bar in this case is unnecessarily broad. In fact, providing such high-level advice and helping the client make strategic choices about patent-prosecution are among the competitive decision-making activities that present a heightened risk of inadvertent use of confidential information. *See Deutsche Bank*, 605 F.3d at 1380 (noting that

competitive decision-making includes "making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions").

Carlson further argues that the scope of activities is overbroad because the proposed "restrictions even cover reexamination proceedings such as those that [North States] has previously (and unsuccessfully) initiated against Carlson's asserted patents." [Pl.'s Letter at 3.] The Court finds that the inclusion of reexamination proceedings among the list of prohibited activities does not render the prosecution bar overly broad in this case. "[E]ven in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve its litigation position against alleged infringers." *Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-cv-1677, 2014 WL 5804334, at *6 (W.D. Wash. July 7, 2014) (citing cases); *Valencell, Inc. v. Apple, Inc.*, No. 5:16-cv-1-D, 2016 WL 7217635, at *9 (E.D.N.C. Dec. 12, 2016) (same).

### *Subject Matter*

Finally, the Court finds that the subject matter covered by the proposed prosecution bar—patent applications relating to pet gates, pet enclosures, or child safety gates, including the patents in suit—is properly tailored to the subject matter of the litigation. The prosecution bar in this case will not prevent Mr. Tecce or Mr. Wasserman from patent-prosecution activities on Carlson's behalf that are not in the family of patents at issue in this case. Carlson does not argue that the subject matter covered by the proposed prosecution bar is problematic and the Court finds that the subject matter is appropriately tailored to the risk of inadvertent use.

### 4.  Carlson's Counsel of Choice

Carlson argues that Mr. Tecce and Mr. Wasserman should not be subject to a prosecution bar because doing so "would place an enormous, undue burden on Carlson despite the lack of

any potential for harm." [Pl.'s Letter at 4.] Carlson emphasizes its litigation counsel's long history of representation, its reliance on litigation counsel for advice on a wide variety of subjects including strategic planning around patent prosecution, and their familiarity with Carlson's business. [Pl.'s Letter at 3–4.] Carlson asserts that applying the prosecution bar to Messrs. Wasserman and Tecce would impose undue burdens on the company because it would have to obtain entirely new counsel for its intellectual property advice and bring them up to speed about its business and litigation history. [Pl.'s Letter at 4.]

Although Carlson certainly has a close relationship with Mr. Tecce and Mr. Wasserman, the Court finds that the burdens imposed by the prosecution bar (as modified by this Order), do not outweigh the risk of inadvertent use if Carlson's litigation counsel were allowed to have access to the information triggering the prosecution bar and still permitted to play a role in competitive decision-making in patent prosecution. Of course, Carlson's litigation counsel are valuable because they play a broader role for the company than ordinary outside counsel, they are intimately familiar with Carlson's patent interests and strategies, and they have been representing Carlson for a long time. But these same factors also make Messrs. Tecce and Wasserman more likely to present a great risk of inadvertent use or disclosure of North States' competitive information if they are permitted to continue patent-prosecution activities absent any restraint. *See Deutsche Bank*, 605 F.3d at 1381 (noting that "the factors that make an attorney so valuable to a party's prosecution interests are often the very factors that subject him to the risk of inadvertent use or disclosure of proprietary competitive information acquired during litigation").

Admittedly, entering a prosecution bar in this case will force Carlson to make a difficult choice. It may either continue to have Messrs. Tecce and Wasserman represent its interests in this litigation, where they are free to receive all the information that will be provided by North

States, or Carlson may decide that Tecce and Wasserman are too important to its ongoing patent-prosecution activities, have them continue in that capacity without being exposed to discovery materials in this litigation and retain new litigation counsel to handle this lawsuit. However, forcing such a choice on Carlson is not unfair because there is a significant risk that its litigation counsel could inadvertently use technical information regarding North States' unreleased products that will be disclosed in this case. Moreover, the Court notes that Carlson has another outside patent-prosecution counsel, Robert J. Jacobson, who has been involved in Carlson's patent applications for a number of years, including for the patents in suit. [*See* Def.'s Letter at 3–4 & Ex. F.] This means that if Carlson chooses to have Tecce and Wasserman continue in their roles as litigation counsel in this case, making them subject to the prosecution bar, Carlson will not be left without a patent-prosecution attorney familiar with its technology or its strategic interests.

III.    **Order**

For all the reasons outlined above, **IT IS HEREBY ORDERED THAT:**

1.  Carlson's request that all non-lawyer employees of North States be denied access to any information marked "Confidential" under the protective order is **DENIED**. The Court will enter a protective order that adopts Paragraphs 3 and 4 of the proposed protective order attached to North States' Letter. [Defs.' Letter at 5–7, ¶¶ 3–4.] Within seven days of this Order, counsel for Carlson shall advise the Court via e-mail of the names of non-lawyer employees to whom information designated as "Confidential" by North States may be disclosed; and

2.  Subject to the modifications set forth in Part II of this Order, North States' request for the entry of a protective order containing a patent prosecution bar is **GRANTED**. The

Court will separately issue a protective order that tracks the modifications indicated

by this Order.

Date: July 9, 2019                              *s/Katherine Menendez*
                                                Katherine Menendez
                                                United States Magistrate Judge

# APPENDIX

The following provisions of the proposed protective order are relevant to the prosecution bar

requested by North States:

> 2. Information and Discovery Material may be designated as ... "Confidential – Attorneys' Eyes Only Prosecution Bar" prior to the time of its production or disclosure in this Action ...
>
> ....
>
> 5. PROTECTED MATERIAL DESIGNATED AS "CONFIDENTIAL ATTORNEYS' EYES ONLY PROSECUTION BAR"
>
>> a. The parties shall have the right to further designate Information as "Confidential – Attorneys' Eyes Only Prosecution Bar." A party may further designate Information "Confidential – Attorneys' Eyes Only Prosecution Bar" if it contends in good faith that the Information is commercially or competitively sensitive, that the Information discloses technical details and/or market studies or analyses regarding the party's unreleased products and that disclosing the Information to another party would cause injury to the Designating Party's commercial or competitive interests. For avoidance of doubt, Information properly designated "Confidential – Attorneys' Eyes Only Prosecution Bar" includes, but is not limited to, the following: technical specifications for unreleased products; design and development documents involving unreleased products; market studies or analyses regarding the future direction of the market for pet gates, pet enclosures or child safety gates; internal communications regarding unreleased products; and internal communications regarding market studies and/or analyses with respect to the future direction of the market for pet gates, pet enclosures or child safety gates.
>
>> b. Unless otherwise ordered by the Court, Information and Discovery Materials designated as "Confidential – Attorneys' Eyes Only Prosecution Bar" may be disclosed only to the persons designated in Paragraphs 3(b)(1), (3), (4), (5), (6) (7), (8), (9) and (10), provided that any such persons designated in Paragraphs 3(b)(5), (6) and (9) first agree to be bound by the provisions of this Protective Order by providing a Written Assurance in the form of an executed copy of Exhibit A.
>
> ....

14. PROSECUTION BAR

    a. For three years following the termination of this Action, including the expiration of the last period for appeal from any Order issued in connection with this action, attorneys, experts, and non-party consultants for the Receiving Party to whom the Producing Party's "Confidential -Attorneys' Eyes Only Prosecution Bar" information has been disclosed pursuant to this Protective Order shall not prosecute, supervise, or assist in any way in the prosecution of any patent application relating to pet gates, pet enclosures or child safety gates, including without limitation the technology in the patents at issue in this litigation, and any domestic and foreign patents and patent applications related to the patents at issue in this lawsuit. The restrictions of this Paragraph shall apply to those individuals who have accessed, reviewed or otherwise obtained for review "Confidential - Attorneys' Eyes Only Prosecution Bar" information. The restrictions of this Paragraph shall not apply to individuals affiliated with the law firms or parties involved in this litigation who did not access or review "Confidential – Attorneys' Eyes Only Prosecution Bar" information.

    b. For purposes of the prosecution bar, prohibited patent prosecution shall mean legal advice relating to prosecution before the United States Patent and Trademark Office ("USPTO") and foreign patent offices, if any, of the patents in suit and their domestic and foreign ancestors and progeny, and any patent applications disclosing or claiming subject matter found in the patents in suit or their domestic or foreign ancestors or progeny, including without limitation, invention identification; invention evaluation; the decision whether to file a patent application for an invention; preparation of and/or amendments to original, continuation, divisional, continuation-in part, request for continued examination, reissue, substitute, renewal or convention patent applications; specification or claim drafting; drafting or amending claims during reexamination or reissue; or consultation on any of the above matters with others performing these activities.